**Opinion issued August 7, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00052-CV

————————————

**BAUER-PILECO, INC., Appellant**

**V.**

**HARRIS COUNTY APPRAISAL DISTRICT, Appellee**

On Appeal from the 125th District Court
Harris County, Texas
Trial Court Case No. 2011-24702

## OPINION ON REHEARING

Appellee, the Harris County Appraisal District ("HCAD"), moved for rehearing and en banc reconsideration of our August 13, 2013 opinion. We grant the motion for rehearing, withdraw our August 13, 2013 opinion and judgment,

and issue this opinion and judgment in their stead. We dismiss HCAD's motion for en banc reconsideration as moot.[1]

In this ad valorem personal property tax case, Bauer-Pileco, Inc. ("Bauer") filed suit against HCAD, seeking judicial review of the decision of the Harris County Appraisal Review Board ("the Board") to deny Bauer's motion to correct the appraisal rolls, filed two years after the tax Bauer had estimated it owed was due. Bauer and HCAD both moved for summary judgment, and the trial court rendered judgment in favor of HCAD and dismissed Bauer's claims. On appeal, Bauer contends that (1) the trial court erroneously rendered summary judgment in favor of HCAD because Bauer conclusively established its right to correct the appraisal roll under Texas Tax Code section 25.25(c); (2) the trial court erroneously interpreted section 25.25(c) as requiring Bauer to prove that it had no personal property located in Harris County to be entitled to correction of the appraisal rolls; (3) the trial court erroneously rendered summary judgment on its constitutional claim because HCAD did not move for summary judgment on this claim; and (4) the trial court failed to award attorney's fees to it under Tax Code section 42.29.

Because we hold that Bauer's motion was untimely under the applicable regulatory scheme, we affirm.

---

[1] *See Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 40 & n.2 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

## Background

Bauer is a Texas corporation with its headquarters in Harris County. Bauer timely submitted a rendition of its business personal property to HCAD for the 2008 tax year. The purpose of this rendition statement was to inform HCAD of the business personal property that Bauer owned in Harris County as of January 1, 2008. Bauer's rendition form stated that it owned $38,831,203 worth of inventory in Harris County. Based on Bauer's rendition statement, HCAD assessed $989,401.65 in personal property taxes against Bauer for 2008. Bauer timely paid these taxes, and it did not protest the appraised value within 30 days from the date the taxes became due, as allowed by Tax Code Chapter 41; nor did it file a motion before the taxes became delinquent to correct an overvaluation of the property as allowed by Tax Code section 25.25(d).

Instead, on January 20, 2011, Bauer filed a motion to correct the 2008 appraisal roll pursuant to Tax Code section 25.25(c). Bauer checked the following "correction types" on the motion: (1) "Clerical, Mathematical, Computer, Transcription Error"; (2) "Property not located at address shown on roll"; and (3) "Property does not exist." Bauer attached an explanation for the correction request in which it informed HCAD that, after rendering its business personal property for the 2008 tax year, it discovered several errors in the rendition process

3

that led it to report that it owned more personal property in Harris County on January 1, 2008, than it actually did.

According to Bauer's 2011 motion, when it prepared its 2008 rendition it "added up all of the inventory subaccounts shown on [its] 2007 trial balance and included all of these account balances as a part of taxable inventory for Harris County [ad valorem] tax purposes." Bauer allegedly mistakenly included an "inventory in transit" subaccount, which represented inventory that was in the process of being shipped to Bauer but was not yet located in Harris County on January 1, 2008. Bauer also allegedly mistakenly included "work in process" subaccounts in its rendition, and these accounts, which represented unbilled receivables, constituted intangible personal property that was not subject to taxation. Finally, Bauer stated that a sister corporation located in California merged with Bauer on December 31, 2007, and that company's inventory, which was located in California and had never been located in Harris County, was subsequently listed in Bauer's records and was mistakenly included on Bauer's rendition form. Bauer concluded that it had mistakenly included $9,088,250 worth of inventory and intangible personal property in its rendition for the 2008 tax year, and it requested that HCAD change the appraisal roll to reflect that it actually had only $29,742,953 worth of taxable personal property in Harris County on January 1, 2008.

4

On March 22, 2011, the Board issued an order denying Bauer's correction request. The order stated, "No error exists—no change."

Bauer timely filed a suit in district court in 2011 seeking judicial review of the Board's determination. Bauer requested that the trial court review the Board's refusal to correct the appraisal roll on the grounds that the property it had reported as being located in Harris County in 2008 and on which it had paid taxes without protest was not located at the address shown on the 2008 appraisal roll and did not exist. In its original petition, Bauer alleged the same three errors in the 2008 rendition statement that it had alleged in its correction motion. Bauer further alleged that the requested corrections would reduce its 2008 personal property taxes from $989,401.65 to $760,041.48, entitling it to a refund of $229,360.17. Bauer requested declaratory and injunctive relief.[2]

Bauer later amended its petition to assert a claim that HCAD had violated Article VIII, Section 1(b) of the Texas Constitution. Bauer alleged:

---

[2] Bauer sought the following declarations: (1) Bauer's 2008 tax records were erroneous and should be corrected; (2) part of the reported inventory was in transit, but not yet delivered to Bauer, and therefore was not located in Harris County and not subject to taxation in Harris County; (3) part of the reported inventory was actually located in California and not subject to taxation in Harris County; (4) part of the reported inventory was "work in process" accounts that were intangible personal property and not subject to taxation at all; (5) Harris County is not entitled to tax Bauer on personal property not located in Harris County; (6) Harris County is not entitled to tax Bauer on intangible property; (7) HCAD is ordered to correct Bauer's 2008 personal property records and change the total amount of personal property from $38,831,203 to $29,742,953; (8) Bauer is entitled to a tax refund for overpayment of its 2008 personal property taxes.

5

> The Texas Constitution authorizes the taxation only of "tangible" personal property "in this State," *i.e.*, in Texas. The Texas Constitution also provides that "all property must be equally and uniformly taxed." By taxing Bauer's intangible property and its personal property located outside of Texas, Defendants have violated Bauer's rights under the Texas Constitution.

(Internal citations omitted.)

Bauer moved for summary judgment, arguing that its evidence established, as a matter of law, that it had mistakenly included in its 2008 rendition statement personal property that was not subject to taxation in Harris County. Bauer's summary judgment evidence included the affidavit of Thomas Jarboe, Bauer's chief financial officer and secretary. Jarboe averred:

> Based on the personal property rendition which Bauer submitted for 2008, HCAD assessed taxes against Bauer in the amount of $989,401.65. Bauer timely paid these taxes. Bauer subsequently discovered that its personal property rendition was incorrect. Specifically, the amount stated in the "Inventory, Supplies, Raw Materials, Work in Process, and Consigned Goods" section was overstated because it included property not subject to taxation in Harris County.

Jarboe further averred that Bauer notified HCAD by filing a correction motion when it discovered the errors, and Bauer informed HCAD that

- [t]he inventory reported in the rendition included inventory that was in transit but not yet delivered to Bauer in Harris County as of January 1, 2008, and that was therefore not physically located in Harris County.

- [t]he rendition included inventory that was located in California and therefore not physically located in Harris County.

6

- [t]he rendition included property that was described as inventory, but which consisted of intangible non-billable receivables for repairs performed for Bauer's customers that were listed on Bauer's books and records as "works in process."

Bauer also attached as summary judgment evidence financial statements and audit reports that described its inventory.

Bauer argued that summary judgment in its favor was proper because its rendition statement "included property which did not exist in the form or at the location described in the appraisal roll" on January 1, 2008, which resulted "in an incorrect valuation in the appraisal rolls" for that year. Bauer argued that uncontradicted evidence demonstrated that over $8 million worth of inventory was not located in Texas either on January 1, 2008, or during the preceding year. As a result, that personal property was not subject to taxation by Harris County in that year. Bauer also argued that it had established as a matter of law that its rendition statement mistakenly included nearly $700,000 worth of intangible property, which is not taxable under the Tax Code. Finally, Bauer requested attorney's fees pursuant to Tax Code section 42.29, and it presented the affidavit of its counsel supporting the fee award.

HCAD filed its own motion for summary judgment, and it argued that Bauer's claims failed as a matter of law. HCAD argued that Bauer was not entitled to correction of the 2008 appraisal rolls under Tax Code section 25.25(c)(3) because "the subject property did exist in the form and at the location described in

the appraisal roll." Citing a case from the Dallas Court of Appeals, HCAD argued that because Bauer undisputedly had *some* personal property located in Harris County, its complaint was really about the value of the property described in the appraisal roll, which it had incorrectly stated in its rendition statement, and not about the nonexistence of property of the type taxed at the location stated in the appraisal roll. HCAD argued that Bauer could not use a section 25.25(c)(3) correction motion to raise this complaint. HCAD also argued that Bauer's claims for declaratory relief failed because declaratory relief is not available when there is an exclusive remedy for the relief sought, which the Tax Code provides in this case, and because its "request for a declaratory judgment is merely duplicative of the relief already requested in this lawsuit." HCAD argued that Bauer was not entitled to attorney's fees because, among other reasons, its claims failed as a matter of law.

On October 18, 2011, the trial court originally denied both Bauer's and HCAD's motions for summary judgment. The court then reconsidered the summary judgment motions on January 5, 2012. After holding a hearing, the court granted HCAD's summary judgment motion and denied Bauer's summary judgment motion. It did not specify the grounds for its summary judgment ruling. Bauer appealed.

8

## Standard of Review

When both parties move for summary judgment and the trial court grants one motion and denies the other, we review both parties' summary judgment evidence and determine all questions presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). Each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Santa Fe v. Boudreaux*, 256 S.W.3d 819, 822 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also* TEX. R. CIV. P. 166a(c) ("The judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response."). If we determine that the trial court erred, we render the judgment that the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661; *FM Props.*, 22 S.W.3d at 872. If the trial court's order does not specify the grounds for its summary judgment ruling, we affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

When construing statutes, as we must in this case, we follow the primary rule of statutory interpretation that we must ascertain and give effect to the intent

of the Legislature. *Harris Cnty. Appraisal Dist. v. Tex. Gas Transmission Corp.*, 105 S.W.3d 88, 97 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000)). We must consider the plain language of the statute, and we may consider the legislative history and the consequences from alternative constructions. *Id.* We construe tax statutes strictly against the taxing authority and liberally in favor of the taxpayer. *U. Lawrence Boze' & Assocs., P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 26 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

### Section 25.25(c)(3) Correction Motions

In its first and second issues, Bauer contends that the trial court erroneously determined that because Bauer undisputedly had some business personal property located in Harris County on January 1, 2008, it could not take advantage of Tax Code section 25.25(c)(3) to correct the appraisal roll, and, thus, the court erroneously rendered summary judgment in favor of HCAD.

The State of Texas has jurisdiction to tax tangible personal property if the property is located in Texas for longer than a temporary period of time. *See* TEX. TAX CODE ANN. § 11.01(c)(1) (Vernon 2008); *id.* § 21.02(a)(1) (Vernon Supp. 2013) ("[T]angible personal property is taxable by a taxing unit if it is located in the unit on January 1 for more than a temporary period."); *U. Lawrence Boze'*, 368 S.W.3d at 24. In contrast, intangible personal property, with certain exceptions not

10

applicable here, is not taxable by the State of Texas. *See* TEX. TAX CODE ANN. § 11.02(a) (Vernon 2008); *id.* § 1.04(6) (Vernon 2008) (defining "intangible personal property").

The Tax Code requires taxpayers to render for taxation all tangible personal property used for the production of income that the person owns on January 1 of the relevant tax year. *See* TEX. TAX CODE ANN. § 22.01(a) (Vernon Supp. 2013); *Tex. Gas Transmission Corp.*, 105 S.W.3d at 92. The rendition statement shall contain, among other things, (1) a description of the property by type or category, (2) if the property is inventory, a description of each type of inventory and a general estimate of the quantity of each type of inventory, and (3) the physical location or taxable situs of the property. *See* TEX. TAX CODE ANN. § 22.01(a)(2)–(4).

Property owners are entitled to file an administrative protest of certain actions, such as the inclusion of the owner's property on the appraisal records, to the appraisal review board pursuant to Chapter 41. *See id.* § 41.41(a) (Vernon 2008); *U. Lawrence Boze'*, 368 S.W.3d at 24. However, to take advantage of this option, generally, a property owner must file a written notice of protest within thirty days after the owner receives a notice of the appraised value of the property. *See* TEX. TAX CODE ANN. § 41.44(a) (Vernon Supp. 2013); *U. Lawrence Boze'*, 368 S.W.3d at 24; *Kellair Aviation Co. v. Travis Cent. Appraisal Dist.*, 99 S.W.3d

11

704, 706 (Tex. App.—Austin 2003, pet. denied) ("Although the scope of actions that may be protested is broad, the time period within which the property owner must initiate a protest is limited . . . ."). It is undisputed that Bauer did not file a protest of its 2008 personal property taxes pursuant to Chapter 41 within 30 days after it received a notice of the appraised value of its property as of January 1, 2008. It is undisputed that it waited nearly three years to protest its own alleged error in reporting its taxable property in its rendition statement.

Tax Code section 25.25, however, provides for late correction of the appraisal rolls under certain limited circumstances. *See* TEX. TAX CODE ANN. § 25.25 (Vernon Supp. 2013). For example, section 25.25(d) allows a property owner, at any time prior to the date the taxes become delinquent, to move to correct "an error that resulted in an incorrect appraised value for the owner's property." *Id.* § 25.25(d); *Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 542 (Tex. App.—Dallas 2000, pet. denied). To be entitled to this correction, the property owner must demonstrate that the error resulted in an appraised value that exceeded the correct appraised value by more than one-third. TEX. TAX CODE ANN. § 25.25(d). If the appraisal review board changes the appraisal roll pursuant to this section, the property owner must pay a late-correction penalty to each affected taxing unit. *Id.*; *Anderton*, 26 S.W.3d at 542. It is undisputed that Bauer did not take advantage of the opportunity provided by Tax Code section 25.25(d)

to correct the allegedly incorrect appraised value of its Harris County property in its 2008 rendition statement before its 2008 taxes became delinquent. *See* TEX. TAX CODE ANN. § 31.02(a) (Vernon 2008) (providing that generally, with exceptions not applicable here, taxes are delinquent if not paid before February 1 of year following year in which taxes are imposed).

Finally, section 25.25(c) provides that in certain specified circumstances the appraisal review board may, on motion of a property owner, direct corrections to the appraisal roll for any of the five preceding years, including changing the roll to correct "the inclusion of property that does not exist in the form or at the location described in the appraisal roll." *Id.* § 25.25(c). Section 25.25(c) provides:

> The appraisal review board, on motion of the chief appraiser or of a property owner, may direct by written order changes in the appraisal roll for any of the five preceding years to correct:
>
> (1) clerical errors that affect a property owner's liability for a tax imposed in that tax year;
>
> (2) multiple appraisals of a property in that tax year;
>
> (3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll; or
>
> (4) an error in which property is shown as owned by a person who did not own the property on January 1 of that tax year.

*Id.* These circumstances involve "basic factual errors," and, therefore, courts have held that section 25.25(c) was enacted "to allow for a change of approved appraisal

records without penalty to the taxpayer only in situations where the decision to make the change is based on an objective, factual determination and the payment of taxes based on the uncorrected [tax] records would be fundamentally unfair." *GE Capital Corp. v. Dallas Cent. Appraisal Dist.*, 971 S.W.2d 591, 593 (Tex. App.—Dallas 1998, no pet.); *see also Kellair Aviation Co.*, 99 S.W.3d at 706–07 (stating same). "These limited corrections [pursuant to section 25.25(c)] include only objective and ministerial matters such as clerical errors. They do not include the substantive reevaluation of a property's market value." *Anderton*, 26 S.W.3d at 543. Bauer argues that it seeks correction of the 2008 appraisal rolls to reflect the incorrect inclusion in its 2008 rendition statement of property that did not exist in the form or at the location described in the appraisal roll on January 1, 2008.

The Tax Code does not explain the meaning of the phrase "inclusion of property that does not exist in the form or at the location described in the appraisal roll" in section 25.25(c)(3). *See Titanium Metals Corp. v. Dallas Cnty. Appraisal Dist.*, 3 S.W.3d 63, 66 (Tex. App.—Dallas 1999, no pet.). The Dallas Court of Appeals has defined "form," in the context of a section 25.25(c)(3) motion, to mean "its identification as a type of property listed under section 25.02(a), such as real property, personal property, an improvement to real property, or some other physical description of the property on the appraisal roll, other than its appraised value or its use." *See id.* (quoting *Dallas Cent. Appraisal Dist. v. G.T.E.*

14

*Directories Corp.*, 905 S.W.2d 318, 321 (Tex. App.—Dallas 1995, writ denied));
*see also* TEX. TAX CODE ANN. § 25.02(a) (Vernon 2008) (describing form and content of appraisal records). In *Titanium Metals*, the Dallas court concluded that section 25.25(c)(3) provides relief "only when no property exists in the form or at the location described in the appraisal roll." *Id.* It clarified that "correction of the appraisal roll is only allowed when the appraisal roll erroneously reflects that a particular form of property exists at a specified location and, in fact, no such property exists at that location." *Id.*; *see also Harris Cnty. Appraisal Dist. v. Tex. E. Transmission Corp.*, 99 S.W.3d 849, 852 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Titanium Metals* with approval); *Kellair Aviation Co.*, 99 S.W.3d at 707 (same); *Curtis C. Gunn, Inc. v. Bexar Cnty. Appraisal Dist.*, 71 S.W.3d 425, 428 (Tex. App.—San Antonio 2002, pet. denied) (same).

*Titanium Metals* is virtually identical to this case. In *Titanium Metals*, Titanium Metals Corporation moved office locations within the city of Grand Prairie, in Dallas County, on December 30, 1993. *Id.* at 64. At the same time, it transferred its inventory, machinery, and equipment to offices outside Dallas County. *Id.* Several months later, Titanium Metals filed its rendition statement for the 1994 tax year, which reflected the business personal property owned by the company in Dallas County on January 1, 1994. *Id.* This statement mistakenly included the value of the inventory, machinery, and equipment that had been

15

moved out of Dallas County on December 30, 1993. *Id.* Titanium Metals did not protest the appraised value of its property pursuant to Chapter 41 within 30 days of receiving notice of the appraised value of the property. *Id.*

In March 1995, Titanium Metals moved for late correction of the appraisal roll and requested a hearing before the appraisal review board, arguing that correction of the appraisal roll was necessary pursuant to section 25.25(c)(3) because the 1994 appraisal roll "incorrectly included property which did not exist at the location described in the roll." *Id.* at 65. The appraisal review board did not change the appraisal roll to reduce the value of the business personal property present at Titanium Metals' new location. *Id.*

The Dallas Court of Appeals rejected Titanium Metals' argument that the appraisal roll included property that "does not exist in the form or at the location described" in the appraisal roll because it included taxable inventory, machinery, and equipment that had been moved out of the district prior to January 1. The court explained,

> TMC's argument is premised on the assumption that we may look "behind the appraisal roll" to determine what *types* of personal property are included in the appraisal roll's description. This, we may not do. *See G.T.E. Directories*, 905 S.W. 2d at 321–22 (concluding we had no authority to "look behind" appraisal rolls—to commercial worksheets supporting rolls—because section 25.25(c)(3) required incorrect description to be "the form . . . *described in the appraisal roll*.").

16

*Id.* at 67 (emphasis in original). The court concluded that "section 25.25(c)(3) only authorizes changes for errors in the description of the form or location of property *in the appraisal roll*" and that it had "no authority to look behind the appraisal roll to the rendition in this case." *Id.* (emphasis in original); *see also Kellair Aviation Co.*, 99 S.W.3d at 708 ("Because section 25.25(c)(3) only authorizes changes for errors in the description of the form or location of property in the appraisal roll, [what] Kellair is essentially asking this Court to do is look behind the appraisal roll to determine how value was determined. This we will not do.").

Here, in support of its section 25.25(c) motion, Bauer presented summary judgment evidence, in the form of Thomas Jarboe's affidavit, that Bauer's rendition statement mistakenly listed personal property that, it contended, was not subject to taxation in Texas, either because it was not located in Texas at any time during the 2008 tax year or because it was intangible personal property and therefore was not subject to taxation at all under the Tax Code. Thus, like Titanium Metals and Kellair Aviation, Bauer asks us to go behind the tax appraisal roll, to look at its own rendition statement, and to examine evidence showing the true value of the type of property listed on the appraisal roll that was actually present at the location described on the appraisal roll at that time. Like Titanium Metals, Bauer did "not dispute that it maintains personal property at the location described in the roll; rather, it argues that it does not maintain *as much* personal

17

property there as is evidenced by the appraisal roll." *See Titanium Metals*, 3 S.W.3d at 66 (emphasis in original). We agree with the court of appeals' statement in *Titanium Metals* that "[t]his, in our view, is a complaint about the *value* of the property described in the appraisal roll, not the existence or nonexistence of certain 'forms' of property at the particular location described." *Id.* (emphasis in original). In other words, Bauer asks to correct an error in its *rendition statement*—not in the appraisal roll—that resulted in an incorrect appraised value for its property.

Section 25.25(c) does not authorize correction of the appraisal records on the basis that a portion of the property owner's property was not located within the taxing district. *See* TEX. TAX CODE ANN. § 25.25(c). Nor does it authorize correction on the basis that specific property does not fall within the definition of taxable property. *See id.* Rather, as these errors affect the value of a property owner's property within a taxing district, these are the types of errors permitted to be corrected late by section 25.25*(d)* of the Tax Code—not section 25.25(c)—upon the filing of a motion and payment of a penalty "at any time prior to the date the taxes become delinquent." *See* TEX. TAX CODE ANN. § 25.25(d); *Anderton*, 26 S.W.3d at 542. To be entitled to this correction, the property owner must demonstrate that the error resulted in an appraised value that exceeded the correct appraised value by more than one-third. TEX. TAX CODE ANN. § 25.25(d). Bauer alleges that the correct appraised value of its property for the 2008 tax year was

18

$29,742,953 and that the appraisal roll's stated value of $38,831,203 was $9,088,250 too high. The actual appraised value does not exceed the allegedly correct appraised value by more than one-third. Moreover, Bauer never filed a motion seeking correction pursuant to section 25.25(d), let alone filed such a motion by the delinquency date of February 1, 2009. Thus, having missed by two years the date for correcting its incorrect rendition in accordance with section 25.25(d), Bauer may not now be heard to complain that the error was in the *appraisal roll*—not in its rendition statement—and that it is entitled to a reduction in its taxes under section 25.25(c) of the Code instead of section 25.25(d).

We further observe that, apart from Section 25.25, providing for late correction of the appraisal rolls under certain limited circumstances, Bauer was not without a remedy to challenge the inclusion of this property as part of its taxable business personal property at the time it was notified of the 2008 tax appraisal. It could have filed an administrative protest before the appraisal review board pursuant to Chapter 41 within 30 days after receiving notice of the appraised value of the property, and, if the board had determined the protest adversely to it, Bauer could have sought judicial review in the district court pursuant to Chapter 42. *See id.* § 41.41(a)(3) (providing that property owner is entitled to file administrative protest of "inclusion of the owner's property on the appraisal records"); *id.* § 41.41(a)(9) (providing that property owner may administratively protest "any

19

other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner"); *id.* § 41.44(a) (providing that property owner generally must file written notice of protest within thirty days after receiving notice of appraised value of property); *id.* § 42.01(a)(1)(A) (Vernon Supp. 2013) (providing that property owner is entitled to seek judicial review of appraisal review board order determining property owner's administrative protest). Bauer did not take advantage of the protest procedure under Chapter 41.

We follow the reasoning of the *Titanium Metals* and *Kellair Aviation Co.* courts and hold that we may not look behind the appraisal roll to evidence that Bauer's own rendition statement was incorrect to determine whether "personal property" that reflected Bauer's own estimation of its 2008 taxable property was valued incorrectly in the appraisal roll because it included specific types of personal property, i.e., inventory and intangible "work in process" accounts, not subject to taxation in the taxing district. In reaching this conclusion, we agree with those other courts that have considered the issue that broadly construing section 25.25(c)(3) to allow the type of complaint at issue here "would be contrary to the legislative scheme of providing a taxing entity the ability to establish a final tax roll." *Kellair Aviation Co.*, 99 S.W.3d at 708; *Curtis C. Gunn, Inc.*, 71 S.W.3d at 429 ("Broadly construing 'location' to permit a challenge under section 25.25(c)(3) to the allocation of the appraised value would be contrary to the legislative

20

scheme."); *see also Tex. Gas Transmission*, 105 S.W.3d at 98 ("Interpreting section 25.25(c)(3) to allow a change in the appraisal roll for interstate allocation in any of the preceding five years, without penalty, nullifies the specific requirements set forth in section 25.25(d) for changing incorrect appraised values.").

We therefore hold that the trial court correctly rendered summary judgment in favor of HCAD on this claim.

We overrule Bauer's first and second issues.[3]

## Bauer's Constitutional Claim

In its third issue, Bauer contends that the trial court erroneously rendered summary judgment on its constitutional claim, which HCAD did not address in its summary judgment motion.

Generally, a party may not be granted judgment as a matter of law on a cause of action that is not addressed in a summary judgment proceeding. *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam); *see also City*

---

[3] Bauer argues, in its fourth issue, that, should it prevail on appeal, it is entitled to attorney's fees pursuant to Tax Code section 42.24. Section 42.29 provides that "[a] property owner *who prevails in an appeal to the court . . .* of a determination of an appraisal review board on a motion filed under section 25.25 may be awarded reasonable attorney's fees." TEX. TAX CODE ANN. § 42.29(a) (Vernon Supp. 2013) (emphasis added). Because we conclude that Bauer is not entitled to correction of the appraisal records under section 25.25, and, therefore, it has not "prevail[ed] on an appeal to the court," we further conclude that Bauer is not entitled to an award of attorney's fees. We therefore overrule Bauer's fourth issue.

21

*of Midland v. O'Bryant*, 18 S.W.3d 209, 218 (Tex. 2000) (applying *Chessher* in context of claims involving constitutional violations). However, we note that the procedures provided in the Tax Code for the adjudication of property tax protests are exclusive. *See* TEX. TAX CODE ANN. § 42.09(a) (Vernon 2008); *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam) ("The administrative procedures are 'exclusive' and most defenses are barred if not raised therein.").

As we have already stated, Tax Code Chapter 41 allows a property owner to file an administrative protest of certain actions, including "unequal appraisal of the owner's property," "inclusion of the owner's property on the appraisal records," and "any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner." *See* TEX. TAX CODE ANN. § 41.41(a)(2), (3), (9). Chapter 42 then allows the property owner to seek judicial review of an adverse determination of an administrative protest. *See id.* § 42.01(a)(1)(A). The Texas Supreme Court has "repeatedly held that 'a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes.'" *Rourk*, 194 S.W.3d at 502; *see also Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005) (stating same); *Kellair Aviation Co.*, 99 S.W.3d at 709 ("[E]ven constitutional entitlement can be waived when a

party fails to follow the implementing legislation.") (citing *Aramco Associated Co. v. Harris Cnty. Appraisal Dist.*, 33 S.W.3d 361, 364 (Tex. App.—Texarkana 2000, pet. denied)). A trial court's subject matter jurisdiction may not be waived and may be raised for the first time on appeal. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.3d 440, 445 (Tex. 1993).

Here, in its first amended petition, Bauer alleged the following:

The Texas Constitution authorizes the taxation only of "tangible" personal property "in this state," *i.e.*, in Texas. The Texas Constitution also provides that "all property must be equally and uniformly taxed." By taxing Bauer's intangible property and its personal property located outside of Texas, Defendants have violated Bauer's rights under the Texas Constitution.

(Internal citations omitted.) It is undisputed that neither Bauer nor HCAD explicitly addressed Bauer's constitutional claim in their respective summary judgment motions and that the trial court granted summary judgment in favor of HCAD on the entire case. It is also undisputed, however, that Bauer did not file an administrative protest of its assessed taxes for the 2008 tax year pursuant to Chapter 41.

We have already held that a section 25.25(c)(3) motion was not the appropriate vehicle to pursue the challenges that Bauer raised, e.g., the inclusion of property not located in Texas and of intangible property as "personal property" on the appraisal records. Instead, the appropriate vehicle was a Chapter 41 protest, which Bauer admittedly did not pursue. Bauer, therefore, did not exhaust its

23

administrative remedies with respect to its constitutional claims, which deprives the trial court of subject matter jurisdiction over these claims. *See Rourk*, 194 S.W.3d at 502; *see also Aramco Associated Co.*, 33 S.W.3d at 364 ("Aramco has a constitutional right not to have the property taxed on the full appraised value, but Aramco could have had the property appropriately apportioned in accordance with the situses if it had properly sought this benefit. But even constitutional entitlement can be waived when a party fails to follow the implementing legislation. Texas had provided the opportunity to obtain these taxing benefits and protections through the statutory remedies."); *Kellair Aviation Co.*, 99 S.W.3d at 709 (citing *Aramco Associated Co.* with approval and holding that "by failing to timely file a protest under section 41.41, Kellair has waived its right to allocation for tax years 1996 and 1997").

We conclude that, under these facts, the trial court lacked jurisdiction to adjudicate Bauer's constitutional claim and that remand of that claim is therefore unnecessary.

We overrule Bauer's third issue.

24

## Conclusion

We affirm the judgment of the trial court. All pending motions are dismissed as moot.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, concurring in the judgment only.